

# SUMMATION OF EVIDENCE

DWAYNE THORNTON

V

ERIC K. SHINSEKI

SECRETARY OF VETERANS AFFAIRS

DEPARTMENT OF VETERANS AFFAIRS

Civil Case #**3:10cv150 DPJ-FKB**

## Cause #1

### Violation of Privacy

*A Policy:*     **Purpose: Privacy Policy B-136-25 October 6, 2006** Implements facility privacy policy in compliance with *VHA Handbook 1605.1* and established responsibilities and procedures for the privacy protection of information that is collected, maintained, used and/ or disclosed, and amended and/or disposed by the staff and systems of the G.V. (Sonny) Montgomery VA Medical Center (VAMC) and the Veteran Center, Jackson, MS and community Based Outpatient Clinics. In this policy, the term workforce refers to on-site or remotely located employees, students, Without Compensation (WOF) staff, volunteers, and any other appointment workforce members. Contractors in accordance with contacts and business associate agreements.

**Policy:** This facility will develop, implement, maintain and enforce a structured program to safeguard individual identifiable information. The privacy program is designed to allow continued operation of mission-critical activities while ensuring the integrity, availability, confidentiality, and authenticity of data and information; minimum necessary access to protected health information; and a continuing awareness of the need for, and the importance of, information privacy within the facility.

*Federal Law   The Privacy Act of 1974 5 U.S.C. §552A i(1) Criminal Penalties*
Any officer or employee of an agency, who by virtue of his employment or official position has possession of, or access to, agency record which contain individual identifiable information the disclosure of which is prohibited by this section or by rules or regulations established there under, and who knowing that disclosure of the specific material is so prohibited, willfully discloses that material in any manner to any person or agency not entitled to received it, shall be **guilty of a misdemeanor and fined not more than $5,000**

### Incident(s)

**1. Cozy Willis**

| | |
|---|---|
| August 30, 2006 | During the scope of my duty while monitoring access to Police Operations Office, MAS employee Cozy Willis attempted to gain unauthorized access which was clearly marked restricted. |
| September 8, 2006 | Cozy Willis accessed VISTA to do a Patient Inquiry on myself to gain identifiable information i.e. Address, telephone number and social security number. |
| September 25, 2006 | Received warrant notification via mail by City of Jackson stating said charges of Simple Assault/bodily injury had been filed by Cozy Willis surrounding incident on August 30, 2006 and was arrested. |
| November 3, 2006 | Request made for Disciplinary Actions against Cozy Willis |
| November 8, 2006 | An order of dismissal and investigation completed by U.S. Attorney Dunn Lampton. |
| Accountability: | Lance Boyington Information Security Officer is responsible for enforcement of V.A. Privacy Policy. |

Adverse Action:   Union posted 10/30/10 complaint referencing incident involving Cozy Willis to build another case of other conspiring officers who also falsely claimed being assaulted by me.

Employee Cozy Willis gained information to pursue a criminal complaint in retaliation surrounding incident on August 30, 2006. He was also able to file a false police report. The evidence showed via VA monitoring system that no assault ever occurred, Mr. Cozy still is an employee of the VA.

## 2. Lyndon Beard

<u>*VA Policy:    May 3, 2006 Security and Law Enforcement J-07B-02*</u> Purpose: To outline and define obligation, duties, and responsibilities; with respect to the protection of patient's visitors, employees, and government property, and the maintenance of law and order at the health care facility of the G.V. (Sonny) Montgomery VA Medical Center (VAMC), and its supporting Lakeland Revenue Center.

**Policy:** As a result of the enactment of Public Law 102-B (August 6, 1991), the issuing of VA Regulation 218 and the publishing of Title 38, C.F.R., Section 1.218, the G.V. (Sonny) Montgomery VAMC will provide persons on federal property the same degree of protection they Enjoy while on city or state property, by maintaining effective physical security and visible deterrence to crime. The health care facility of the VAMC and its supporting Lakeland Revenue Centers are located on federal property under concurrent jurisdiction.

<u>*#4 Rules, Regulations, and applicable Statues:*</u>   A. General: In addition to other applicable state and laws, ordinances, and regulations, reference is made to ***Title 38, United States Code Section 901-902***, which is the statutory authority of the ***Secretary of Veterans Affairs*** to maintain law and order, protect persons and property, make needful regulations, and empower officers to enforce federal laws and regulations on lands and in buildings under the control of VA. <u>**VA Regulation 1.218(c) is the Secretary's delegation of authority**</u> to empower hospital police officers to enforce the law (through Under Secretary for Health) at VA health care facilities.

| | |
|---|---|
| February 13, 2007 | Steve Achord who is the elected Marshal of Denham Springs Ward 2 Court with Ward 2 Marshall's Office present to VA emergency room for treatment. His wife (Arlene Achord) presented through the main entrance of the hospital attempting to clear metal detectors. Detectors captured what appeared to be a large caliber pistol (.357 Caliber Bullets, hollow points) in Mrs. Achord tote bag. Officer James Spence made the detection and alerted his Supervisor, which was me **Dwayne Thornton**. |

<u>*VA Policy:    May 3, 2006 Security and Law Enforcement J-07B-02*</u> *Section D. Contraband Property* Under this Mrs. Achord's firearm was seized and issued a citation **UOR (Uniformed Officers Report) # 07-02-13-1640**. Although this policy allows law enforcement to enter VA on official duty capacity with a firearm and to enter on unofficial duty with firearm to be secured and be in a lock box in the Police Services, Mrs. Achord did not present in uniform or did she make available law enforcement credentials on her person at the time of her citation.

| | |
|---|---|
| February 14, 2007 | Received faxed documentation from Ward Two Marshall's office, Livingston Parish, Louisiana stating the official status of Steve Achord and that his wife was named as being an Auxiliary Deputy with Ward 2 Marshall's Office. |

2 | Page

|  |  |
|---|---|
|  | During Mr. Achord's stay in the VA hospital contact was made by Mr. Achord to Officer Beard, who conspired to retaliate against me for his wife's citation for which Mr. Achord was given my personal identifiable information to commence a retaliatory scheme. |
| il 26, 2007 | Mr. Achord under the color of law, request a criminal history check on myself through the State of Louisiana, Department of Public Safety and Corrections with my personal identifiers provided to him by Officer Beard |
| August 17, 2007 | Chief Of Police informed me that he was in receipt of letter indicating another officer sent a document to ORM containing personal identifiable information. |
| August 1, 2007 | Officer Beard filed an EEO complaint against me in retaliation of my being promoted over him back in March 2006. He commenced to state that he'd found that I was utilizing two different social security numbers and he wanted to know why. To support his case, Officer Beard presented the Criminal History Report to the Office of Resolution Management, Little Rock Arkansas. The EEO officer in return sent a letter of Privacy Act Violation by Lyndon Beard to the Center Director Richard J. Baltz. |
| January 4, 2008 | After being made aware of Officer's Beard violation, I requested via letter an investigation by the FBI to ensue the office of origination of the criminal history checks. |
| January 31, 2008 | FBI answered in letter form indicating a review of NCIC activity logs shows inquiries pertaining to me on |

A) 3/14/2007 Louisiana State Police, Insurance Fraud Unit, Baton Rouge, LA by **Roger White Special Agent Homeland Security** for which I've never filed a FEMA related relieve for Katrina, and another criminal history check by the Louisiana State Police.

B) 4/11/2007 Canton Police Department Canton, MS requested by VA employee **Harvey Marcellus (Mental Health)** who is also a part-time officer with Canton Police Department. Officer Lorraine Hudson of the VA is friends with Deputy Chief Of Police Bracey Coleman, Canton, MS. I had no encounters of any sort with Harvey Marcellos during the scope of my duty at VA and can't justify why he ran a criminal history check as well.

C) 4/26/2007 Louisiana State Penitentiary, Angola, Louisiana

| February 18, 2008 | The State of Louisiana answered via letter to the FBI's inquiry stating that they had received a call from Denham Springs Ward 2 Marshall's Office, Mr. Steve Achord requesting to run a Criminal History Check on Dwayne Thornton as a part of an investigation they were performing. The Criminal History was ran and supplied to the Marshall's office to Mr. Achord. |
|---|---|
|  | Mr. Achord responded to the inquiry of the Louisiana's Department of Public Safety for his role in the criminal history check. His letter stated the information (criminal history check) was sent to Officer Lyndon Beard W/M Police Services to help with his problems with myself. Mr. Achord further stated he also followed up with a complaint against me surrounding the incident of his wife receiving a citation with the VA Medical Center's Management. |

Adverse Action: Personal information disseminated which led to numerous NCIC checks by VA employees and an other affiliates who acted under the color of law to perform retaliatory measures against me.

## Cause #2

### Hostile Working Environment while attempting to carry out duties of a Supervisor

**VA Policy June 8, 2007 K-05-17 Disciplinary and Adverse Actions** Purpose: To establish policies and procedures for taking disciplinary and adverse actions. The provisions of the memorandum apply to all permanent employees at the G.V. (Sonny) Montgomery VA Medical Center who have satisfactorily completed their probationary period (Title 38, GS and WG) and are not occupying a centralized position.

**Policy:** The policy of the VA and this medical center is to maintain high standards of employee integrity, conduct, effectiveness, and service to the public. When such standards are not met, it is essential that prompt and just corrective action be taken. The policy of VA is to maintain standards of conduct and efficiency that will promote the best interests of the service. Adverse actions against employees will be taken only for such cause as will promote the efficiency of the service. Disciplinary and adverse actions shall be governed by these basic principles:

1) An employee shall be informed in writing honestly and specifically whey the action is being initiated.

2) An employee shall be given reasonable opportunity to present his or her side of the case.

3) The employee and his/her representative shall have assurance of freedom from restraint, interference, coercion, discrimination, or reprisal in discussing, preparing and presenting a defense.

B. **Service Chiefs are responsible for:**     **Chief VA Police Jesse Lumpkins**

1) Administering the policy concerning disciplinary and adverse actions in conformance with the requirements of this policy. Reviewing existing policy and recommending changes.

2) Assigning supervisors appropriate authority for the direction and discipline of employees under their jurisdiction and ensuring that supervisors properly exercise their disciplinary authority.

3) Assuring the proper training of supervisors so that they are able to perform their duties as described herein.

4) Ensuring that the policies and procedures for administering disciplinary and adverse actions are bought to the attention of and made available to all employees.

**Supervisors are responsible for:**     **Supervisor Dwayne Thornton**

1) Maintain a working environment conducive to employee productivity, high level of moral, and discipline among the employees he/she supervises.

2) Gathering, analyzing, and documenting the facts concerning each disciplinary or adverse action. Information will be developed impartially, and a reasonable effort will be made to reconcile conflicting statements by developing additional evidence.

3) Initiating timely and appropriate disciplinary or adverse actions.

4) Reviewing existing policies and recommending appropriate changes.

**<u>VA Policy March 17, 2008 K-05-45 Prevention of Workplace Harassment</u> Purpose:** The purpose of this policy is to state the policies, responsibilities, and procedures to be followed regarding the prevention of workplace harassment.

**Policy:** It is the policy of the G.V. (Sonny) Montgomery VA Medical Center that harassment is a form of discrimination, a violation of federal law, and a serious violation of the Department of Veterans Affairs' policies or directives. This policy includes harassment in any form that violates Title VII of the Civil Rights Act of 1964, as amended. This policy applies to all employees and covers employees outside the workplace while conducting government business, and non-employees while conducting business in the G.V. (Sonny) Montgomery VAMC facilities.

3. Definitions:

    a. Harassment: verbal or physical conduct that denigrates or shows hostility or aversion towards an individual because of his/her race, color, religion, gender, national origin, age or disability, or that of his/her relatives, friends, or associates, and that :

    1) Has the purpose or effect of creating and intimidating, hostile, or offensive work environment;

    2) Has the purpose or effect of unreasonably interfering with an individual's work performance; or

    3) Otherwise adversely affects and individual's employment opportunities.

## Incident(s)

Date:            January 2, 2008

Officer's Name   Supervisor Chief Lumpkin Chief of Police VA Police Services

Offense:         During an office discussion with Chief Lumpkins, concerning inappropriate conversations amongst Officer Partee and Chief Lumpkins about myself, Chief Lumpkin upon ceasing my defense, he stood up from his desk and proceeded toward me in an aggressive manner and pointed his finger at me. As I attempted to leave, he responded additionally by saying <u>**"Nigger you have messed up and your spirit is not right."**</u>

| | |
|---|---|
| Date: | December 11, 2007 |
| Officer Name: | Lenell May |
| Offense: | Threatening and disrespectful demeanor. Two occasions of un-professional and disrespectful demeanor towards shift supervisor. Insubordination and unprovoked threatening gestures (fist clenched) |
| Action: | Statement given to Chief Lumpkin |
| Chief's action: | Performed Report of Investigation No action taken against officer. |
| Date: | October 12, 2007 |
| Officer Name: | Supervisor Chief Lumpkins Chief of Police VA Police Services |
| Offense: | Stood up from desk and approached me in an aggressive manner. We were discussion a rating of fully successful on performance evaluation. I question what have I failed to do to progress to the next level. |
| Action: | I received on November 3, a letter of admonishment for failure to pay a debt. I provided documentation that this debt was previously paid beforehand on September 14, 2007. |
| Date: | October 3, 2007 |
| Officer Name: | Pearlie Partee |
| Offense: | 1. Unexcused or unauthorized absence<br>2. Leaving Job, to while assigned or VA premises, during working hours without permission<br>3. Deliberate failure or unreasonable delay in carrying out instructions<br>4. Deliberate refusal to carry out any proper order from supervisor. |
| Action: | Statement given to Chief Lumpkin, email sent to H.R. |
| Chief's action: | No action taken |
| Date: | April 20, 2007 |
| Officer Name: | Officer Buchanan |
| Offense: | Disrespectful & Unprofessional and hostile behavior toward supervisor. Inappropriate physical contact made in form of unwanted kiss. |
| Action: | Statement given to Chief Lumpkin |
| Chief's action: | None |

| | |
|---|---|
| Date: | March 14, 2007 |
| Officer Name: | Pearlie Partee |
| Offense: | Violation of VA Handbook 0730 Para 2 |
| Action: | Verbal counseling done with written statement presented to Chief Lumpkin. Hostility shown towards supervisor. |
| Chief's Action: | None |

| | |
|---|---|
| Date: | January 5, 2007 |
| Officer's Name: | Officer Arnez Harrison |
| Offense: | Disorderly conduct, unprofessional behavior, threatening supervisor to do bodily harm. |
| Action: | Statement written given to Chief Lumpkin |
| Chief's action: | Proposal for reprimand |

| | |
|---|---|
| Date: | November 10, 2006 |
| Officer Name: | Officer Lyndon Beard and Officer Cade |
| Offense: | Generated letter of Counseling unattended work stations |
| Action: | Drafted unofficial Letter of Counseling for Chief's review |
| Chief's action: | Chief decided to not pursue course of action and rescinded letter. Officers never received letter of counseling. |

| | |
|---|---|
| Date: | July 25, 2006 |
| Officer's Name: | Officer Bennett, Officer Buchanan, and Officer Harrison |
| Offense: | Unprofessional behavior, insubordinate, not at assigned work area. Disorderly behavior with threatening gestures and remarks made to supervisor. |
| Action: | Statement given to Chief Lumpkin, Officers filed union complaint |
| Chief's action: | None, Meeting with Director yielded Chief's failure to respond or take action against officers involved. No action taken against officers, investigation yielded any wrong doing on my part as a supervisor. |

# Cause #3
# Wrongful Termination

<u>**VA Policy June 8, 2007 K-05-17 Disciplinary and Adverse Actions**</u> **Purpose:** To establish ●icies and procedures for taking disciplinary and adverse actions. The provisions of the ●morandum apply to all permanent employees at the G.V. (Sonny) Montgomery VA Medical Center who have satisfactorily completed their probationary period (Title 38, GS and WG) and are not occupying a centralized position.

**Policy:** The policy of the VA and this medical center is to maintain high standards of employee integrity, conduct, effectiveness, and service to the public. When such standards are not met, it is essential that prompt and just corrective action be taken. The policy of VA is to maintain standards of conduct and efficiency that will promote the best interests of the service. Adverse actions against employees will be taken only for such cause as will promote the efficiency of the service.

Disciplinary and adverse actions shall be governed by these basic principles:

1) An employee shall be informed in writing honestly and specifically whey the action is being initiated.

2) An employee shall be given reasonable opportunity to present his or her side of the case.

3) The employee and his/her representative shall have assurance of freedom from restraint, interference, coercion, discrimination, or reprisal in discussing, preparing and presenting a defense.

***Procedures:*** Before a disciplinary or adverse action is initiated, the facts bearing on the case must be carefully ●lyzed and evaluated to determine what, if any, offense has been committed. The preliminary inquiry will be ●ucted by the immediate supervisor or the service chief and should be supported by written and signed ●ements from interested parties. There must be sufficient evidence to substantiate the charge before the action is initiated. The employee will be confronted with all the evidence influencing the decision and given an opportunity to reply verbally and/or in writing before a final decision is made.

<u>**August 11, 2000 VA Handbook 0730 Appendix A. Specific Medical Standards for VA Police Officer Applicants and Incumbents.**</u> **Purpose:** To provide examining physicians and psychologists with guidelines for determining the physical qualifications and the emotional and mental stability of VA Police Officer position applicants and incumbents.

2. **Applicability.** These standards apply to all applicants for initial appointment in the GS-083 series, including in-service applicants not already in the GS-083 series. All VA police officers, detectives, and supervisors, to include chiefs, will be reexamined annually to determine their continued physical and emotional suitability to perform the functional requirements of the position.

3. **Use.** A copy of the OPM Qualification Standard Manual for the GS-083 Police Series along with a copy of these instructions will be provided to the examining physician with the environment factors annotated as illustrated in the appendix. Examinees must be medically certified on Part D of the SF 78-110 by signature of the examining physician as eligible under these standards.

4. **Physical Requirement.** VA Police Officers must be capable of arduous physical exertion. This includes the ●ility to carry persons in emergency evacuations, to run to the assistance of offense victims, and intercede

in physical disturbances. Any structural or functional limitation or defect which tends to interfere materially with a high degree of physical activity will disqualify. All applicants must:

   a. Demonstrate to the physician's complete satisfaction the upper and lower body strength and movement coordination necessary to perform the functional requirements circled on the SF 78 associated with this standard.

   b. Have a good distant vision in each eye and ability to distinguish basic colors.

   c. Be able to hear the conversational voice without the use of a hearing aid.

   d. Possess complete and functional limbs.

   e. Possess emotional and mental stability.

5. **Psychological Assessment:** The initial and annual medical examinations must include a psychological assessment of the applicant/officer's emotional and mental stability by a psychiatrist or psychologist. Police officer duties include personal encounters with patients, visitors, and other employees. Encounters are often with mental ill, irrational, or disturbed persons who, although assaultive or destructive, must be handled with understanding, full control of force, and unimpeded judgment. Any emotional or mental condition which could cause the applicant/officer to be a hazard to others or self during stress situations and physical altercations will disqualify. <u>The psychological assessment will be limited to an interview by a psychologist or psychiatrist covering only job related factors.</u>

6. Psychological Testing: Standardized psychological testing may be used only after reason to question the applicant/officer's suitability has arisen. *If, during the psychological assessment, the psychologist/psychiatrist has an articulative reason to doubt that the officer is capable of performing the duties of a police officer, the psychologist/psychiatrist should make a formal recommendation for psychological testing to the Employee Health physician. In such a situation for the Employee Health physician may approve such recommendation and direct appropriate psychological testing.* <u>The Office of Security and Law Enforcement (in consultation with the VHA Mental Health Strategic Health Care Group in Central Office) will provide and update guidance for both psychological assessment and psychological testing.</u>

**<u>VA Policy August 21, 2007 Number K-05-03 Employee Assistance Program</u>** Purpose: To set forth policies and procedures concerning the Employee Assistance Program (EAP) at this medical center in order to deal constructively with poor job performance related to mental health problems and substance abuse.

Policy:   A. The EAP is intended to help employees who have behavioral problems which affect work performance. The management team recognizes behavioral and mental health problems as disorders or illnesses which often can be successfully treated. Employees who need help in these areas will be given the same consideration as those with other illnesses. It is this medical center's goal to help those individuals who develop such problems by ensuring that they receive the same careful consideration and offer of assistance that is presently extended to employees having other illnesses or health problems.

## Incident(s)

1. Date:      September 15, 2009

Findings:
■■■cial Security exam for disability by Dr. Andrew Bishop. No adverse findings. Stated the patient has gotten himself upside down with the VA system and the patient seems to be the victim of an administrative situation. No finding of a paranoid personality disorder. Applied for disability based on diagnosis of Paranoid Personality Disorder by Dr. James Herzog VA

2. Date:      December 5, 2008

Action:      Terminated by VA system

3. Date:      August 21, 2008

Action:      2nd Psychological examination conducted by Sterling Taylor, VA psychologist.

Findings:
Major problems identified related to his current place of employment. No biographical problems identified. No cognitive concerns identified. MMPI-2  didn't reflect problems with anger management or resistance to authority. Tests were not consistent with an over-inflated ego. No problems with chronic irritability or impatience. Problems reflected are contributed to a direct result of current working situation at the VA Medical center. Difficult to believe due to my spotless career in United States Marine Corps and employment with various other departments prior to VA it is difficult for Dr. Taylor to state I have serious personality flaws. Dr. ■■lor noted on the exam that there have been at least three separate incidents of problems with both superiors ■ subordinates at the Jackson VA Medical Center.

4. Date:      May 13, 2008

Action:      Issued proposed removal due to an unfavorable psychological evaluation.

5. Date:      February 19, 2008

Action:      Ordered to turn in police credentials, lost supervisory duties, assigned to dispatcher duties. EEO complaint filed

6. Date:      February 1, 2008

Action:      Underwent psychological examination conducted by James H. Herzog, VA psychologist.

Violation:   Prior to examination Supervisor, Chief Lumpkins made in-appropriate contact via phone call to Dr. Herzog and conveyed biased information regarding Chief Lumpkins's perceptions of my behavior in the work place. Chief Lumpkins stated I had been the subject of many complaints by other police officers and that I had an anger management problem.

             Dr. Herzog took these comments into consideration and formulated a diagnosis in collusion with Chief Lumpkins retaliatory scheme.

| | |
|---|---|
| Findings: | Dr. Herzog diagnosed me with Paranoid Personality Disorder. Dr. Herzog is the same psychologist who for the previous three years found me fit for duty. The difference in this event is that Chief Lumpkins and Dr. Herzog discussed the case prior and had considered Chief Lumpkins negative commentary regarding myself when forming his diagnosis. Dr. Herzog found me unfit for duty as a police officer by letter dated February 6, 2008, diagnosed me as having a Paranoid Personality Disorder. |
| 7. Date: | January 25, 2008 |
| Action: | Received e-mail from Linda Keeling employee health nurse indicating scheduled appointment for psychological exam on February 1, 2008. |
| Violation: | Chief Lumpkins approached Linda Keeling in verbal form requesting to schedule a psychological exam due to his concerns about me. Chief Lumpkins based his requests on January 2, 2008 for which I allegedly appeared agitated and overly aggressive when interacting with Officer Pearlie Partee at Station One. |
| 8. Date: | January 24, 2008 |
| Action: | Authority to carry a firearm and perform police duties suspended. |
| Policy: | VA Handbook 0730 August 11, 2000 clause |

> 4(a) Directors are authorized to suspend arrest authority of any VA police officer whose judgment or professional competence is in doubt.
>
> (b) The basis for the suspension of arrest authority will be fully documented and necessary action, such as counseling, and/or appropriate in-service training, will be given to the employee to remedy the cause of arrest authority suspension.
>
> (c) If the employee's professional competence does not improve sufficiently to restore the arrest authority within a reasonable period of time, for example, 60 days, appropriate administrative action (which may include disciplinary or adverse action) will be taken.

## Violation Summary:

- I was not given counseling prior to suspension of arrest authority nor after.

- I was not given or provided any training surrounding the incident of Officer Partee or specifically given written documentation there of. Chief Lumpkins suspended arrest authority and not Center Director.

- I was cleared for duty with Fully Successful rating by Chief Lumpkins for years prior to these incidents by the same psychologist.

- I was not referred to treatment upon findings of Paranoid personality Disorder or given opportunity to correct alleged deficient findings.

- Some witnesses were coerced into writing false statements. Other witness statement that supported me was not ever introduced for consideration.

- Center Director didn't initiate her own independent investigation. She went solely on information relayed to her.

- I incurred numerous incidents involving subordinates exhibiting aggressive and hostile acts of disrespect towards me as a supervisor.

- My superior failed to act appropriately on each statement given as an item of concern.

- If in fact according to statements of Dr. Herzog that diagnosis of Paranoid Personality Disorder existed prior to hire at the VA, the VA knowingly hired me with this information in mind. If so, terminating me because of this same alleged pre-existing condition would be a violation of the Americans with Disabilities Act as well as violating my status knowingly as well my protected status of being a 50% disabled Veteran.